UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERALD HUGHES, | ) | CASE NO. CV 17-154-FMO (PJW) |
| | ) | |
| Petitioner, | ) | |
| | ) | FINAL REPORT AND RECOMMENDATION |
| v. | ) | OF UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| DANIEL PARAMO, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

This Final Report and Recommendation is submitted to the Hon. Fernando M. Olguin, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  For the reasons discussed below, it is recommended that the Petition be denied and the action be dismissed with prejudice.[1]

---

[1]  This Final Report and Recommendation is issued to address contentions raised by Petitioner in his Objections to the initial Report and Recommendation.  (*See* Footnote 4.)  Petitioner was not given a chance to file Objections to this Final Report because it did not change the underlying decision recommending denial of the Petition.

I.

SUMMARY OF PROCEEDINGS

A.   State Court Proceedings

In 2011, a jury in Los Angeles County Superior Court found Petitioner guilty of kidnapping to commit forcible oral copulation, forcible sexual penetration, or forcible rape; oral copulation by force; sexual penetration by force; and forcible rape. (Clerk's Transcript ("CT") 261-70.)  The jury also found that he committed the crimes using a handgun. (CT 261-70.)  After determining that he had one prior "strike" under California's Three Strikes law and had served a prior prison term, the trial court sentenced him to life in prison plus 52 years. (CT 328, 614-22.)

In 2014, Petitioner appealed to the California Court of Appeal and concurrently filed a habeas corpus petition in that court. (Lodged Document Nos. 2-5.)  The appellate court affirmed the judgment and denied the petition. (Lodged Document No. 2 at 231-46.)  He then filed concurrent petitions for review in the California Supreme Court, both of which were summarily denied. (Lodged Document No. 2 at 188-230, 249-329, and Nos. 7-8.)

In 2016, Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court. (Lodged Document No. 9 at 56 and No. 16.)  The superior court denied the petition because it was untimely and because it raised successive claims.  Some of the claims were also denied because they failed to merit relief. (Lodged Document No. 9 at 56 and No. 17.)  Petitioner then filed another petition in the California Court of Appeal, which was also denied on the merits and

for raising claims previously rejected by the court.[2]  (Lodged Document Nos. 10-12.)  Finally, Petitioner filed a habeas corpus petition in the California Supreme Court, which was denied with a citation to *In re Clark,* 5 Cal.4th 750, 797-98 (1993).  (Lodged Document Nos. 13-15.)

B.  <u>Federal Court Proceedings</u>

On January 9, 2017, Petitioner, represented by counsel, filed the instant Petition for Writ of Habeas Corpus, claiming:

1.  Trial and appellate counsel were ineffective.

2.  There was insufficient evidence to support his convictions.

3.  The prosecution unconstitutionally withheld exculpatory evidence.

4.  Petitioner's right to confront the witnesses against him was impinged.

5.  Petitioner's right to due process was denied as a result of the seven-year delay between the crimes and his arrest.

6.  There was cumulative error.

(Petition at 6-11 and Attached Memorandum at 14-47.)

---

[2]  The California Court of Appeal rejected the petition, in part, "for failure to state sufficient facts demonstrating entitlement to the relief requested," which is a ruling on the merits.  *See Phelps v. Alameida,* 569 F.3d 1120, 1125 n.8 (9th Cir. 2009) (holding state court's rejection of claim for failure to state prima facie case constitutes denial on the merits); *Sanchez v. Allison*, 2014 WL 7205015, at *3 n.2 (C.D. Cal. Dec. 16, 2014) ("[I]t seems clear that the court of appeal's denial of the petition 'for failure to state sufficient facts demonstrating entitlement to the relief requested' reflected a substantive judgement on the prima facie lack of merit in [p]etitioner's claim.").

3

FACTUAL SUMMARY

The following statement of facts was taken verbatim from the California Court of Appeal's opinion affirming Petitioner's conviction:

In 2003, the victim, identified in the record as Jane Doe, was a bartender at JJ's Bar (JJ's) in El Monte. The bar was within walking distance from her home. On February 23, 2003, the victim and the married man she was dating, Jose Garcia, went out drinking and had an argument. Garcia and the victim gave several different accounts about what bars they went to and where the argument occurred. At about midnight, the victim started walking home from JJ's, in a high crime area known for prostitution activity. Several drivers stopped to offer her a ride, but she declined. She was frightened and called Garcia from a payphone to come get her, but continued walking after the call was disconnected.

[Petitioner] drove up to the victim and at gunpoint demanded that she get in his car. He directed her to do as she was told and drove her to a grocery store parking lot on Rosemead Boulevard. He then told her to pull down her pants and underwear and unsuccessfully attempted to insert his flaccid penis into her vagina. Frustrated, he demanded oral sex. The victim complied, and afterwards [Petitioner] again attempted to penetrate her, but could not. He inserted a vibrator into her vagina and moved it around, then managed to force his now erect penis partway in. The victim could not tell if [Petitioner] ejaculated. After he lost his

erection, [Petitioner] cleaned the victim with napkins he wetted at a water hose. The napkins, which he threw on the ground, were not recovered.

[Petitioner] drove the victim to her home and apologized for what he had done, explaining she was not the person he had been sent to assault that night. He offered her a job transporting money or drugs and wanted to know where he could reach her. The victim agreed to work for him and gave him JJ's telephone number.

Once home, the victim told her uncle she had been robbed because she was ashamed to tell him the truth. But she called Garcia and told him someone with a gun forced her into a car and abused her. She cried during the phone call. On Garcia's advice, the victim called 911 and was taken to a hospital where she was joined by Garcia. Both were interviewed by police. Later that night, the victim was examined by a nurse, who noted abrasions outside and a tear inside her vagina, consistent with penetration by an object. The nurse also noted an unusual gray secretion outside the vagina that could have been caused by a dirty napkin.

In 2010, [Petitioner's] DNA was matched to the DNA profile of sperm found on genital and vaginal swabs taken from the victim, but not on an oral swab.

(Lodged Document No. 2 at 232-33.)

# III.

## STANDARD OF REVIEW

The standard of review in this case is set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts Supreme Court case law or if it reaches a conclusion different from the Supreme Court's in a case that involves facts that are materially indistinguishable. *Bell v. Cone*, 535 U.S. 685, 694 (2002). To establish that the state court unreasonably applied federal law, a petitioner must show that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but objectively unreasonable. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Where no decision of the Supreme Court has squarely decided an issue, a state court's adjudication of that issue cannot result in a decision that is

contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Petitioner raised most of his claims in his petitions for review in the California Supreme Court, but that court did not explain its reasons for denying them. (Lodged Document Nos. 7-8.) The appellate court, however, did (Lodged Document No. 2 at 231-44), which this Court presumes is the basis for the state supreme court's subsequent decisions denying the claims. In this situation, the Court looks to the appellate court's reasoning and will not disturb it unless it concludes that "fairminded jurists" would all agree that the decision was wrong. *Richter,* 562 U.S. at 102; *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013) (approving reviewing court's "look through" of state supreme court's silent denial to last reasoned state-court decision).

Petitioner first raised some of his sub-claims in Grounds One, Two, and Four in state habeas corpus petitions. Ultimately, these claims were denied by the California Supreme Court on procedural grounds. (Lodged Document No. 15.) Generally speaking, the state supreme court's rejection of claims on procedural grounds bars this Court from addressing the claims on the merits.[3] *See, e.g., Johnson*

---

[3] Respondent urges the Court to "look through" the California Supreme Court's denial on habeas review and apply the reasoned decision of the California Court of Appeal, which rejected the sub-claims on procedural grounds *and* on the merits. (*See* Answer at 6.) The California Supreme Court did not simply issue a "post-card" denial, however, it specifically cited *In re Clark*, indicating that the claims were being rejected for procedural errors. Nevertheless, because the Petition is untimely and because the sub-claims fail under any standard of review, the Court need not address Respondent's argument any further. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by

1  *v. Lee,* 136 S. Ct. 1802, 1805-06 (2016); *Walker v. Martin*, 562 U.S.
2  307, 317-21 (2011).  The Court has, however, elected to overlook the
3  procedural bar issue because it is easier and more efficient to
4  dispose of the Petition on other grounds, namely, the statute of
5  limitations and the merits.  *See Lambrix v. Singletary*, 520 U.S. 518,
6  524-25 (1997) ("We do not mean to suggest that the procedural-bar
7  issue must invariably be resolved first . .   . ."); *see also Franklin*
8  *v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar
9  issues are not infrequently more complex than the merits issues
10  presented by the [habeas petition], so it may well make sense in some
11  instances to proceed to the merits if the result will be the same.").
12  In doing so, the Court will conduct a *de novo* review of the record to
13  determine whether the sub-claims are meritorious.  *See Cone v. Bell*,
14  556 U.S. 449, 472 (2009) ("Because the [state] courts did not reach
15  the merits of [Petitioner's] claim, federal habeas review is not
16  subject to the deferential standard that applies under AEDPA . . . .
17  Instead, the claim is reviewed *de novo*."); *Stanley v. Schriro*, 598
18  F.3d 612, 622 (9th Cir. 2010).

19                                   IV.

20                               DISCUSSION

21  A.    Statute of Limitations

22        Prior to filing an Answer, Respondent moved to dismiss the
23  Petition as untimely under the federal one-year statute of
24  limitations.  (Docket No. 8.)  The Court denied the motion, finding
25  that Petitioner could be entitled to statutory tolling because the

26  ────────────────────────
27  engaging in de novo review when it is unclear whether AEDPA deference
    applies, because a habeas petitioner will not be entitled to a writ of
28  habeas corpus if his or her claim is rejected on de novo review . . .
    .").

                                     8

record was unclear as to whether the state courts' denials of his habeas petitions were because the claims were successive or untimely. (Docket No. 14 at 2.)  In his Answer, Respondent argues again that the Petition should be dismissed because it is barred by the statute of limitations.  Relying on the Ninth Circuit's decision in *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), Respondent argues that Petitioner's state petitions were not "properly filed"--regardless of whether they were rejected for being successive or for being untimely --and, as such, they did not toll the statute of limitations.  (Answer at 7-9.)  For the following reasons, the Court agrees.

State prisoners seeking to challenge state convictions in federal habeas corpus proceedings are subject to a one-year statute of limitations.  28 U.S.C. § 2244(d).  Petitioner's conviction became final on June 16, 2015, 90 days after the state supreme court denied review and the time for filing a petition for writ of certiorari in the United States Supreme Court expired.  *See, e.g., Brambles v. Duncan*, 412 F.3d 1066, 1069 (9th Cir. 2005).  Petitioner then had one year, until June 16, 2016, to file a habeas corpus petition in this court.  *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). The current Petition was filed on January 9, 2017, more than six months after that deadline.  Accordingly, absent tolling, the Petition is untimely and subject to dismissal on that ground.

The statute of limitations is tolled during the time a "properly filed" habeas petition (or other collateral attack) is pending.  28 U.S.C. § 2244(d)(2).  The statute is not tolled between the time a Petitioner's state conviction becomes final and the time he files his first collateral challenge in state court.  *See Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007).  The limitations clock is stopped,

however, during the pendency of one full round of state collateral review, which includes the intervals between a lower court decision and the filing of a petition in a higher court, so long as the petitioner does not delay too long between filings. *See Waldrip v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008).

In this case, Petitioner filed a habeas petition in Los Angeles County Superior Court on January 7, 2016. (*See* Lodged Document No. 16.) The superior court denied that petition, in part, however, because Petitioner "failed to explain and justify the significant delay in seeking habeas relief," citing *In re Clark*, 5 Cal.4th 750, 765 (1993) and *In re Swain*, 34 Cal.2d 300, 302 (1949). (Lodged Document No. 17.) Because this petition was untimely, it did not toll the statute of limitations. *See Newman v. Warden*, 2016 WL 7077860, at *2 (C.D. Cal. Nov. 2, 2016) (concluding petitioner was not entitled to statutory tolling where the superior court denied the petition, in part, because it was untimely, citing to *Clark* and *Swain*); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter'" for statutory tolling under AEDPA.). The fact that the superior court also addressed the merits of some of the claims does not change the analysis or the result. *See Carey v. Saffold*, 536 U.S. 214, 226 (2002) (holding statutory tolling is unavailable for untimely state claims "regardless of whether [the state court] also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits").

Petitioner's subsequent petitions filed in the California Court of Appeal and the California Supreme Court were both denied with a citation to *In re Clark*, 5 Cal.4th 750 (1993). (*See* Lodged Document

10

Nos. 12, 15.)  The cited portion of *Clark* stands for the "general rule" that, "absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied." *Clark*, 5 Cal.4th at 797.  Thus, in each case, the state court decided that the petition was untimely or that it was successive.  *See, e.g., Curiel v. Miller*, 830 F.3d 864, 877 n.3 (9th Cir. 2016) (Bybee, J., concurring) (noting a "'*Clark* citation likely signifie[s] an invocation of the bar against successive petitions'" but "sometimes stands for a timeliness bar").  In either case, however, the petitions were not "properly filed" so as to trigger statutory tolling.  *See Porter*, 620 F.3d at 958 ("For tolling to be applied . . . the petition cannot be untimely or an improper successive petition."); *see also Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005) (holding state habeas petition dismissed as untimely was not "properly filed" and does not trigger statutory tolling); *Silva v. Cate*, 2013 WL 3353845, at *4 n.3 (S.D. Cal. Jul. 3, 2013) ("A successive state habeas petition is not considered 'properly filed' . . . and therefore cannot be used when calculating statutory tolling.").  As such, statutory tolling does not save the Petition.

The statute of limitations is subject to equitable tolling if a petitioner can show that he has been diligently pursuing his rights and that "extraordinary circumstances" prevented him from filing on time.  *Bills v. Clark*, 628 F.3d 1092, 1096 (9th Cir. 2010) (citing *Holland v. Florida*, 560 U.S. 631, 648-49 (2010)).  It is Petitioner's burden to prove any such claim.  *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Petitioner suggests that he is entitled to equitable tolling because the California Court of Appeal's order denying his petition both on the merits and as successive "actively misled" him into believing that the petition had been properly filed. (Docket No. 11, Opposition to Motion to Dismiss at 14-15.) That, however, is simply not the case. As the California Supreme Court made clear in *Clark*, "[a] successive petition presenting additional claims that could have been presented in an earlier attack on the judgment is, of necessity, a delayed petition." 5 Cal.4th at 770. California courts have long held that untimely claims will not be considered on habeas corpus "absent justification." *Id.* at 797; *see also In re Dixon,* 41 Cal.2d 756, 759 (1953) (recognizing claims may be procedurally barred for failure to raise them on direct appeal unless "special circumstances" exist). Accordingly, Petitioner is not entitled to equitable tolling because he has not demonstrated extraordinary circumstances prevented him from filing on time. Because the Petition is untimely, it is subject to dismissal with prejudice.[4]

---

[4] In his Objections, Petitioner cites a Northern District of California case, *Rogers v. Swarthout*, 2015 WL 493842, at *3 (N.D. Cal. Feb. 4, 2015), for the proposition that the language in *Porter* was dicta and that successive petitions filed in state court are "properly filed" and toll the statute of limitations. It goes without saying that *Rogers* is not binding on this Court. In fact, it is not even binding in the Northern District and was ignored six weeks later when a different judge in that district reached the opposite conclusion. *See Polk v. Hughes*, 2015 WL 1322304, at *3 (N.D. Cal. Mar. 24, 2015). The other federal judges in California who have reached this same issue have likewise concluded that Petitioner's position is wrong. *See, Atzet v. Paramo*, 2018 WL 2771269, at *3-4 (E.D. Cal. June 7, 2018) (finding state court petition rejected for being successive with citation to *In re Clark* was not properly filed and did not toll the statute of limitations); *Fulton v. Paramo*, 2016 WL 8223353, at *2-3 (C.D. Cal. Dec. 7, 2016) (same); *Garmon v. Foulk*, 2015 WL 1457629, at *2-3 (C.D. Cal. Mar. 30, 2015) (same). Petitioner's citations to *Cross v. Sisto*, 676 F.3d 1172 (9th Cir. 2012), and *Artuz v. Bennett*,

B. <u>Insufficient Evidence</u>

Despite the fact that the Court has concluded that the Petition is untimely and subject to dismissal on that ground, it has elected to also address the merits.  In Ground Two, Petitioner contends that there was insufficient evidence to convict him of rape or kidnapping to commit forcible rape.  (Petition, Attached Memorandum at 33.) There is no merit to these contentions.[5]

The United States Supreme Court established in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), that federal habeas corpus relief is not available to a petitioner who claims that the evidence was insufficient to support his conviction unless he can show that, considering the trial record in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  In evaluating such claims, the Court presumes, even if it does not affirmatively appear in the record, that the jury resolved any conflicting inferences in favor of the prosecution.  *Wright v. West*, 505 U.S. 277, 296–97 (1992). Further, the Court reviews the state court's decision "with an additional layer of deference," granting relief only when the state court's judgment was contrary to or an unreasonable application of *Jackson*.  *Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir. 2005).

531 U.S. 4 (2000), are misplaced.  In *Cross*, the Ninth Circuit examined the implications of a procedural default under *Ex parte Swain*, 34 Cal.2d 300 (1949), not *Clark*.  *Cross*, 676 F.3d at 1176.  In *Artuz*, the Supreme Court examined New York's handling of successive petitions under New York law and found that such claims were not improperly filed.  *Artuz*, 531 U.S. at 10–11.  In contrast, California courts have made clear that successive claims are necessarily untimely under state law.  *Clark*, 5 Cal.4th at 770.

[5] The Court has addressed the claims out of order for the sake of clarity.

13

Petitioner claims that, at times, the victim testified that Petitioner's penis did not penetrate her vagina and, at other times, she could not remember whether it did or not. (Petition, Attached Memorandum at 33.) He contends that this "unreliable and inconsistent testimony" could not have been believed by the jury. (Traverse at 33.)

The California Court of Appeal rejected this argument, finding that the victim's testimony was not inherently incredible or unbelievable:

> [Petitioner] claims the victim gave conflicting versions of events, but he fails to identify any material contradictions in her testimony. The victim's testimony is neither physically improbable nor inherently incredible, and it is corroborated by other evidence. DNA evidence supports her identification of [Petitioner] as the perpetrator. Her trial testimony that [Petitioner] forced her to enter his car at gunpoint is consistent with her 2003 reports of the incident. Although the victim vacillated as to whether [Petitioner] penetrated her vagina with his penis and whether he ejaculated, the presence of his sperm on vaginal swabs supports her trial testimony that he did. The victim's testimony that [Petitioner] used a vibrator is corroborated by the examining nurse's testimony that the vaginal abrasions were consistent with the use of an object. [Petitioner] claims it is incredible that a rapist would drive his victim home, offer her a job, and take her telephone number, but, as he also notes, the victim told

14

1    police that by the end of the encounter he again held her at

2    gunpoint.

3         [Petitioner] asks us to conclude that the victim had

4    consensual sex with him and fabricated the rape story to get

5    Garcia's attention; he argues that is the only logical

6    conclusion, based on her decisions to walk at night in an

7    area known for prostitution activity and to call Garcia

8    rather than 911.  Even were that a reasonable conclusion, it

9    is not the only one that can be drawn from the evidence.

10   Moreover, the conclusion [Petitioner] urges would require us

11   to redetermine issues of credibility and draw from the

12   victim's testimony inferences favorable to [Petitioner]

13   rather than to the judgment.  Doing so would amount to an

14   improper reweighing of the evidence.

15   (Lodged Document No. 2 at 234-35 (internal citations omitted).)

16        The Court agrees.  The victim's testimony that Petitioner put a

17   portion of his penis inside her vagina was sufficient in and of itself

18   to convict Petitioner of rape.  *See United States v. Larios*, 640 F.2d

19   938, 940 (9th Cir. 1981) (holding testimony of even a single witness

20   is sufficient to uphold a conviction).  The fact that her testimony

21   was corroborated by DNA evidence demonstrating that Petitioner's sperm

22   was found inside her vagina eliminates any doubt.  Though, as

23   Petitioner points out, none of this evidence was "determinative," it

24   is the jury's job to weigh the evidence and determine what happened.

25   In this case, the jury concluded, based on this evidence, that

26   Petitioner had raped the victim.  The Court is not empowered nor

27   inclined to re-weigh the evidence.  *See Jackson*, 443 U.S. at 319

28   (noting it is the jury's role "to resolve conflicts in the testimony,

15

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"); *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) (finding federal court on habeas review "do[es] not have the jurors' right to weigh the evidence" but may only determine "whether rational jurors could reach the conclusion that these jurors reached").

Petitioner contends that he should not have been convicted of kidnapping (for the purpose of committing a sexual assault) because he only drove the victim "a few blocks" and the movement was incidental to the assault itself. (Petition, Attached Memorandum at 32.) Under California law, the prosecution is required to prove that the defendant moved the victim a "substantial distance," which means "more than which is merely incidental to the commission of the rape," and that "the movement substantially increased the risk of harm to the victim, over and above that necessarily present in the [assault] itself." Cal. Penal Code § 209(b). In determining whether there is sufficient evidence to prove this, the jury considers "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." *People v. Dominguez*, 39 Cal.4th 1141, 1152 (2006).

Here, the victim testified that, while she was walking on the sidewalk, Petitioner pointed a gun at her and forced her into his car. (Reporter's Transcript ("RT") 778-80.) He then drove her three or four blocks away and parked behind a warehouse in the "very back far from the parking lot" where there were no people or cars and raped her. (RT 782-83.) This was clearly enough to support the jury's finding that Petitioner moved the victim a substantial distance and

16

that the movement was not merely incidental to the rape.  By moving

her from a sidewalk adjacent to a street where drivers or pedestrians

might pass and see what was happening to a secluded spot several

blocks away where others would likely not pass, Petitioner increased

the probability that he could rape her without being caught and

without her escaping.  Obviously, this also increased the chances that

he could harm her if he wanted.  *See, e.g., People v. Power*, 159 Cal.

App.4th 126, 139 (2008) (finding jury could reasonably conclude that

distance from point of abduction to point of rape in a cemetery (two

or three minutes away by car) was a "substantial distance" not merely

incidental to the rape and that it increased the risk of harm to the

victim); *People v. Aguilar,* 120 Cal. App.4th 1044, 1046-50 (2004)

(moving rape victim 133 feet to unlit area where less likely to be

detected was sufficient for kidnapping to commit rape).  As such, the

Court concludes that there was sufficient evidence for the jury to

convict Petitioner of committing kidnapping for the purpose of

forcible oral copulation, forcible sexual penetration, or forcible

rape.

Finally, Petitioner contends that there was insufficient evidence

for the jury to find that the prior strike allegation was true.

(Petition, Attached Memorandum at 30.)  Petitioner makes no attempt,

however, to explain why his 1987 conviction for assault with a deadly

weapon does not qualify as a strike under California's Three Strikes

law or why the evidence was insufficient to prove that he was

convicted of that crime.  Thus, this claim is conclusory and does not

warrant relief.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)

("Conclusory allegations which are not supported by a statement of

specific facts do not warrant habeas relief.").  For these reasons,
Petitioner's claims of insufficient evidence are rejected.[6]

C.    *Brady* Violation

In Ground Three, Petitioner argues that the prosecution violated
*Brady* when it failed to turn over exculpatory evidence in a timely
manner.  (Petition, Attached Memorandum at 33.)  Petitioner contends
that, had the defense received the victim's clothing prior to trial,
he would have been able to impeach the victim's testimony and likely
would have been acquitted of the rape.  (Petition, Attached Memorandum
at 34-36.)  There is no merit to this claim.

The Due Process Clause requires the prosecution to disclose any
evidence in its possession that is both favorable to the accused and
is material to guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83,
87 (1963).  Evidence is material "if there is a reasonable probability
that, had the evidence been disclosed to the defense, the result of
the proceeding would have been different."  *United States v. Bagley*,
473 U.S. 667, 682 (1985).  Where the prosecution fails to produce
*Brady* material and a defendant can establish prejudice, he is entitled
to a new trial.  *See Kyles v. Whitley*, 514 U.S. 419, 422 (1995).

---

[6]    In state court, Petitioner challenged the validity of the
prior strike on the ground that there was no evidence that he had
personally used a deadly weapon in the 1987 assault--as opposed to
simply aiding and abetting someone else's use of a gun.  (*See* Lodged
Document No. 10 at 39-40.)  That distinction is unimportant, however,
because, after the passage of Proposition 21 on March 8, 2000, assault
with a deadly weapon was listed as a "strike" offense, eliminating any
personal use requirement.  *See, e.g., Villareal v. Miller*, 2016 WL
6652683, at *1 (C.D. Cal. Nov. 9, 2016) (finding "Petitioner's 1984
juvenile adjudication [for assault with a deadly weapon] . . .
qualifies as a strike regardless of whether he was the perpetrator or
only guilty of aiding and abetting" because he "committed the
underlying offense . . . after passage of Proposition 21").

18

On the night Petitioner raped the victim, she went to the hospital and was examined by a nurse. She told the nurse, among other things, that she was wearing a bra when she was raped and that the assailant had put his hand inside her bra. (RT 2116-17.) Prior to trial, Petitioner's counsel requested that the prosecution produce the victim's clothing. (*See* RT 4202-03.) Police were unable to find it. (RT 4203-04.)

At trial, the victim reiterated her claim that she was wearing a bra and that Petitioner had put his hand inside it. (RT 783.) The hospital nurse who had examined her also testified. She explained that a report she drafted the night she examined the victim listed her clothing but did not include a bra. (RT 2128.) Officer Ken Fraser confirmed that the only clothes taken from the victim and booked into evidence that night were a top, pants, and panties. (RT 1559.)

After the trial was over, police found the victim's clothing but did not find a bra with the clothing. (RT 3909, 6611-18.) Petitioner's counsel filed a motion to inspect, photograph, and test the victim's clothing, which was unopposed by the prosecution and granted by the court. (CT 345-51, 358.) Defense DNA testing showed that Petitioner's sperm was found on the crotch of the victim's panties and on her jeans. (CT 401-02; RT 6612.)

Petitioner filed a motion for a new trial or dismissal of the charges based, in part, on his claim that the prosecution failed to turn over this "exculpatory evidence." (CT 364-415.) The trial court denied the motion, finding that the DNA results were not exculpatory and that the evidence that the victim was likely not wearing a bra was "de minimis." (RT 6648-49, 6651.)

Petitioner appealed.  The California Court of Appeal agreed with
the trial court that no *Brady* violation had occurred because the
"victim's clothing was not material impeachment evidence":

> Before trial, the El Monte Police Department informed
> the prosecution that the victim's clothes could not be
> found; after trial, the clothes were located and turned over
> for examination and DNA testing.  The testing confirmed the
> presence of [Petitioner's] sperm on the victim's pants and
> underwear.  Despite the incriminating DNA evidence found on
> the clothes, [Petitioner] claims they could have been used
> at trial to impeach the victim.  He does not show that the
> impeachment would have been on material aspects of her
> testimony rather than on collateral matters, or that it
> would have had a significant effect on defense counsel's
> trial strategy.

> That the victim wore a top, rather than a shirt as she
> claimed at trial, or that she wore no bra, contrary to what
> she told police and the jury, was not material, and
> impeachment evidence on the subject was presented at trial.
> The victim herself testified she did not remember what type
> of shirt she wore.  The examining nurse's report listed the
> victim's clothing as jeans, top and panties, and did not
> include a bra.  The defense pointed out the discrepancy at
> trial.

> [Petitioner] speculates the victim's pants and
> underwear could not have been pulled down to her knees
> "easily" while she sat in the car.  But the victim did not
> testify that she did so "easily."  [Petitioner] claims the

20

presence of his sperm on the victim's clothes would have
impeached her testimony that he did not ejaculate. Evidence
was presented at trial that [Petitioner's] sperm was inside
the victim's vagina even though the victim was unsure if he
ejaculated.

(Lodged Document No. 2 at 236.)

The prosecution's failure to turn over the victim's clothing
before trial did not amount to a *Brady* violation. For the most part,
the clothing had no exculpatory value whatsoever and, in fact, when
tested, corroborated the victim's testimony that Petitioner had raped
her. The fact that Petitioner's sperm was found on the victim's
panties and pants only further confirmed his identity as the
assailant. Though Petitioner claims he could have used this
information to undercut the victim's testimony that he did not
ejaculate, this is not remotely close to being material evidence that,
had it been disclosed, would have had a reasonable probability of
changing the outcome of this case. After all, there was already
evidence at trial that Petitioner's sperm was found in the victim's
vagina. Clearly, evidence that Petitioner ejaculated was far more
damaging to Petitioner's case than any impeachment value it had in
undercutting the victim's memory about the details of the rape.
*Strickler v. Greene*, 527 U.S. 263, 281 (1999) (holding "there is never
a real '*Brady* violation' unless the nondisclosure was so serious that
there is a reasonable probability that the suppressed evidence would
have produced a different verdict").

Similarly, the fact that turning over the victim's clothing
confirmed that she was not wearing a bra was inconsequential. Both
Nurse Henry and Officer Fraser testified at trial that no bra had been

collected from the victim on the night of the rape. As such, the defense already had testimony which it could use to call into question the victim's recollection of the events. Further, as the trial court noted, any impeachment value in demonstrating that the victim was wrong when she said she was wearing a bra on the night of the rape was minimal, at best, and certainly does not undermine the Court's confidence in the verdict. *See Benn v. Lambert*, 283 F.3d 1040, 1053 (2002) ("Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial."); *see also Conley v. United States*, 415 F.3d 183, 189 (1st Cir. 2005) ("Suppressed impeachment evidence is immaterial under *Brady*, however, if the evidence . . . impeaches on a collateral issue."). Accordingly, the state courts did not err when they rejected Petitioner's *Brady* claim.

D.   Confrontation Clause Violation

In Ground Four, Petitioner contends that he was denied his constitutional right to fully confront and cross-examine several of the witnesses at trial. (Petition, Attached Memorandum at 36.) There is no merit to his claim.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront and cross-examine witnesses. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). That right is violated when a criminal defendant is "prohibited from engaging in otherwise appropriate cross-examination designed . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)(quoting *Davis*, 415 U.S. at 318); *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009).

The Confrontation Clause does not guarantee a limitless right to inquire into the bias of a witness. *Van Arsdall*, 475 U.S. at 679. It guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(emphasis in original)). Trial judges retain wide latitude in imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Id*.

Petitioner claims that the trial court erred when it refused to allow him to impeach the victim with evidence that she had been convicted of petty theft more than a year before the rape.[7] (Petition, Attached Memorandum at 36-37.) The California Court of Appeal held that the trial court did not abuse its discretion in excluding this evidence:

> While petty theft is a crime of moral turpitude, it is a not a particularly "forceful indicator of immoral character or dishonesty." The trial court was concerned that the facts of the offense might be used to smear the victim's character. That was a valid concern. Questioning a rape victim about a minor offense she committed in her early

---

[7] The victim and her sister stole merchandise from a J.C. Penney store. The trial court ruled that the evidence should be excluded because the probative value of the prior offense was low and victims of sexual assault are particularly vulnerable to prejudicial attack. (RT 422-42.)

1  twenties might have been perceived as "unfair and needlessly
2  humiliating."

3  (Lodged Document No. 2 at 237 (internal citations omitted).)

4  Where, as here, the proposed cross-examination relates to
5  impeachment, the Court examines whether the exclusion of the evidence
6  prevented the jury from having sufficient information to appraise the
7  bias and motives of the witness. *Skinner v. Cardwell*, 564 F.2d 1381,
8  1388-89 (9th Cir. 1977). In this instance, defense counsel was
9  allowed to challenge the victim's veracity by questioning her over the
10 course of several days about her inability to recollect many of the
11 details of the incident, as well as numerous inconsistencies between
12 her trial testimony and the statements she gave to police shortly
13 after the assault. (*See* RT 813-39, 1053-1094, 1246-57, 1353-72, 1386-
14 93.) This allowed defense counsel to argue to the jury that she was
15 an untrustworthy witness, who could not be believed because she was
16 out drinking with her married boyfriend. (RT 2340-41, 2403.) The
17 defense further argued that she was claiming to have been raped only
18 to get a green card to stay in the country, that she was lying about
19 the injuries she sustained, and that she was actually working as a
20 prostitute and had consensual sex with Petitioner. (RT 2404-08, 2422-
21 23, 2426-29, 2435.) Petitioner has not explained how evidence of the
22 victim's prior petty theft would have added so much more to the cross
23 examination that the jury would not have believed her. Petitioner had
24 more than enough ammunition to cross-examine her and to expose any
25 weaknesses in her testimony. *See Hayes v. Ayers*, 632 F.3d 500, 518
26 (9th Cir. 2011) (finding no Confrontation Clause violation when
27 excluded evidence had low probative value and jury had sufficient
28 information to appraise bias and motivation of witness).

Petitioner argues that he should have been allowed to impeach Officer Marin with evidence that he had previously been accused of perjury for lying on official police forms.[8] (Petition, Attached Memorandum at 37-38.) The state appellate court rejected this claim because the evidence had "marginal impeachment value" relative to the witness's role in the trial:

> [Petitioner] also sought to question Officer Marin about dismissed perjury charges that were based on his signing of three blank forms El Monte city employees participating in a carpooling program used to claim he rode with them. Officer Marin's only testimony at trial was that he transported the victim's sexual assault kits, along with other DNA evidence, to the crime lab in 2008. [Petitioner] claims the perjury charge, stemming from Officer Marin's signing of blank forms, was relevant because he had to fill out forms on the DNA evidence he transported. [Petitioner] speculates that the jury could have inferred that he mixed the DNA samples or submitted false forms to implicate [Petitioner]. The court did not abuse its discretion in excluding this evidence of a collateral credibility issue about a minor witness.

(Lodged Document No. 2 at 237-38 (citation omitted).)

Petitioner's argument here is without merit. Petitioner did not claim at trial that his sperm and DNA were not found on the victim.

---

[8] The charges against Officer Marin were ultimately dismissed in the interest of justice and, therefore, the trial court held that the prejudicial effect from allowing the impeachment evidence substantially outweighed its probative value. (RT 466.)

He claimed that he had sex with her but that the sex was consensual. Thus, Officer Marin's role had no impact on the merits of the case.

Further, Petitioner's own post-trial DNA tests confirmed that his DNA was on her clothes. Obviously, Officer Marin had no connection to that testing. Nor was there any suggestion that police had framed Petitioner for rape and planted his DNA on her or her clothes. Under these circumstances, any prior allegation of perjury against the officer who transported the sexual assault kit to the crime lab was completely irrelevant and, therefore, the evidence was properly excluded. *See Tinsley v. Borg*, 895 F.2d 520, 531 (9th Cir. 1990) (holding exclusion of impeachment evidence having "little probative value on the central issue of [defendant's] guilt or innocence" did not violate constitutional norms).

Finally, Petitioner claims that he was effectively denied any "meaningful" cross-examination of the victim when the court allowed her statements in the investigating officer's and nurse's reports to be read to the jury. (Petition, Attached Memorandum at 41.) The California Court of Appeal rejected this claim:

> During the evidentiary hearing on [Petitioner's] motion for new trial, [Petitioner's] two trial attorneys testified they agreed to have the reports read into evidence because of their concern that the victim had been on the witness stand for several days and that she had been crying at times. The attorneys wanted to "get her off" the stand, but also wanted to introduce her prior inconsistent statements into evidence since their strategy was to attack the victim's credibility. They made a tactical decision to have the reports read into evidence since the statements in them

would "come out on direct or cross-examination anyway. There wasn't anything in there that wouldn't have been brought out."

. . . .

[Petitioner's] argument that reading the reports was prejudicial because they endorsed the prosecution's case is exaggerated. The witnesses' prior inconsistent and consistent statements were admissible for purposes of impeachment and rehabilitation under [California] Evidence Code sections 1235 and 1236. The court instructed the jury that the reports themselves were not evidence, but could "facilitate the expeditious and just ascertainment of the truth." We do not read the court's instruction as vouching for the truth of the statements contained in the reports, as [Petitioner] insinuates; nor could investigating officer Fraser's statement that his report is "an accurate record" of statements the victim and Garcia made to him in 2003 be reasonably read as endorsing the truth of those statements. That a statement is accurately recorded does not mean it is true, and to the extent the reports contained prior inconsistent statements, the jury, as the fact finder, was to ascertain the truth.

(Lodged Document No. 2 at 239-40.)

Where, as here, defense counsel stipulates to the reading of the statements into evidence, there can be no violation of the right to cross-examine the witness. *See Gomez v. Sherman*, 2016 WL 861087, at *13 (N.D. Cal. Mar. 7, 2016) (finding, because "the parties stipulated to the admission of the lab reports . . . [t]heir stipulation avoided

27

the Confrontation Clause problem"); *see also Bullcoming v. New Mexico*, 564 U.S. 647, 651 (2011) ("*Absent stipulation*, the [Supreme] Court ruled, the prosecution may not introduce [a testimonial] report without offering a live competent witness to testify to the truth of the statements made in the report." (emphasis added)). In any event, the victim testified at trial and was subject to cross-examination as detailed previously. Thus, this claim does not merit relief. *See United States v. Valdez–Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994) (rejecting Confrontation Clause claim where witness testified at trial and defendant had opportunity to cross-examine him).

E.    Due Process Violation for Pre-Arrest Delay

In Ground Five, Petitioner claims that the seven-year delay in arresting and charging him violated his right to due process. (Petition, Attached Memorandum at 42-45.) He complains that the prosecution failed to compare the DNA evidence collected during the examination of the victim to known DNA samples in the FBI's database for five years, which "unconstitutionally hamstr[ung] his defense." (Petition, Attached Memorandum at 42-43, 45.)

The California Court of Appeal explained the reasons for the lengthy delay in charging Petitioner, as follows:

> The evidence shows there were backlogs in testing DNA
> evidence, and the sheriff's department had directed police
> departments not to submit DNA evidence for testing unless a
> named suspect was in custody. In 2003, no evidence linked
> [Petitioner] to the crime, and the case was closed. A DNA
> backlog reduction program was implemented in 2009. The El
> Monte Police Department submitted the victim's sexual
> assault kit for analysis in late 2008, and the DNA was

28

1     matched to [Petitioner's] 1999 DNA profile in early 2010.

2     Newly obtained swabs from [Petitioner] and the victim were

3     matched to the 2003 sexual assault kit in August 2010.

4     [Petitioner] was charged in September 2010.

5   (Lodged Document No. 2 at 243.)

6     The Sixth Amendment right to a speedy trial is not implicated

7   until charges are pending or an arrest has been made. *Doggett v.*

8   *United States*, 505 U.S. 647, 651-52 (1992); *United States v. Marion*,

9   404 U.S. 307, 320-21 (1971). Rather, the primary safeguard for

10  protecting against stale charges is the statute of limitations.

11  *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Nevertheless, the

12  "Due Process Clause has a limited role to play in protecting against

13  oppressive delay" in filing criminal charges against a defendant. *Id*.

14    To establish actual prejudice, a defendant "must demonstrate by

15  definite and non-speculative evidence how the loss of a witness or

16  evidence is prejudicial to the defendant's case." *United States v.*

17  *Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992). This is a heavy burden

18  for a defendant and one that is rarely met. *See United States v.*

19  *Sherlock*, 962 F.2d 1349, 1354 (9th Cir. 1992). It is not enough to

20  assert that the memories of witnesses have faded over time. *See*

21  *Prantil v. California*, 843 F.2d 314, 318 (9th Cir. 1988); *see also*

22  *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985)

23  ("[P]rotection from lost testimony generally falls solely within the

24  ambit of the statute of limitations.").

25    The Ninth Circuit has set forth a two-part test for determining

26  whether delay in charging a defendant constitutes a due process

27  violation: "(1) the defendant must prove actual, non-speculative

28  prejudice from the delay; and (2) the length of the delay, when

29

balanced against the reason for the delay, must offend those
fundamental conceptions of justice which lie at the base of our civil
and political institutions." *See Huntley*, 976 F.2d at 1290 (internal
quotation marks omitted).

In denying Petitioner's claim that the pre-charging delay
violated due process, the appellate court found that
Petitioner had failed to demonstrate sufficient prejudice to warrant
relief:

> [Petitioner's] showing of prejudice is weak and
> self-serving. He claims memory loss and loss of material
> witnesses to confirm his alibi, yet he based his motion for
> a new trial on his own and his brother's claimed
> recollection of the events of February 23, 2003.
> [Petitioner] complains the victim suffered from memory loss
> because she could not remember certain details at the
> preliminary hearing; yet, in other portions of his opening
> brief, he contends she was able to testify fully about the
> charged crime at trial. Moreover, the existence of
> contemporaneous police and medical examination reports
> diminishes any claimed prejudice from memory loss.
> [Petitioner's] loss of evidence is exaggerated as
> photographs of the victim were available at trial, and her
> 911 call was included in police reports.

(Lodged Document No. 2 at 242-43 (internal citation omitted).)

Here, Petitioner offers nothing but generalized claims that the
victim's and the other witnesses' memories had faded since the night
of the rape. (*See* Petition, Attached Memorandum at 43, 45; Traverse
at 39-40.) Although it is true that the victim had difficulty

remembering the details of the assault that occurred nearly 10 years earlier, her statements to the police immediately afterward were preserved in the police reports and available to the defense at trial. As to the loss of memory from any defense witnesses, Petitioner fails to offer any reasonable argument as to how they would have aided his defense had the charges been brought earlier.  Further, his claims that he was prejudiced because "any surveillance footage would have been destroyed" and that the victim's "911 call was deleted" are purely speculative.  He has not demonstrated that there was any surveillance footage, let alone that it would have contained helpful evidence.  Similarly, he fails to explain how the loss of the 911 recording substantially hampered his defense.

Because Petitioner has not made a showing that he suffered actual prejudice, the court need not consider the reasons for the delay.  *See United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (holding because the defendant's "assertion of prejudice is too speculative . . . [o]ur inquiry is therefore at an end").  Accordingly, the state court's rejection of this claim was reasonable and, as such, Petitioner's claim is denied.[9]

F.   Ineffective Assistance of Counsel

In Ground One, Petitioner contends that both trial and appellate counsel rendered ineffective assistance which prejudiced his case and

---

[9]   The Court notes, as well, that the Supreme Court has never articulated a precise due process standard for pre-charging delay claims.  *See Lovasco*, 431 U.S. at 796–97; *see also Thompson v. Dikinson*, 2014 WL 2465937, at *32 (E.D. Cal. May 29, 2014) ("No U.S. Supreme Court precedent holds that due process is violated by delay where a DNA 'cold hit' solves a long-cold case.").  Thus, Petitioner is likely foreclosed from obtaining relief for this claim on habeas review because the Supreme Court has not squarely addressed the issue. *See Phillips v. California*, 2016 WL 8223354, at *22 (C.D. Cal. Nov. 21, 2016).

rendered his prosecution fundamentally unfair. (Petition, Attached
Memorandum at 14-30.) The Court does not agree.

The Sixth Amendment right to counsel guarantees not only
assistance, but effective assistance, of counsel. *See Strickland v.
Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of
ineffective assistance of counsel, Petitioner has to establish:
(1) counsel's performance fell below an "objective standard of
reasonableness" under prevailing professional norms; and (2) the
deficient performance prejudiced the defense, i.e., "there is a
reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different." *Id*. at
687-88, 694.

Petitioner claims that trial and appellate counsel acted
unreasonably by failing to challenge the chain of custody for the
collection and testing of the DNA evidence. (Petition, Attached
Memorandum at 14-20.) At trial, several prosecution witnesses
testified regarding the procedures used by the police and the testing
laboratory to maintain the integrity of the physical evidence
collected in the rape kit. (RT 1655-56, 1703-25, 1803-07, 1818-22,
1826-53.) Defense counsel did not object to the admission of the DNA
testing results based on any irregularities in the chain of custody.
Petitioner argues that there were "vital gaps" in the handling of the
evidence and that the evidence should not have been admitted without
further testimony. (Petition, Attached Memorandum at 17-18.)[10]

---

[10] Petitioner's trial counsel signed a declaration indicating
that he did not believe that there was any legal reason to exclude the
DNA evidence, so he elected to pursue a consent defense theory at
trial. (Traverse, Exh. 1.)

Petitioner's after-the-fact claim that the DNA evidence would have been excluded based on a lack of proper chain of custody is wholly speculative.  The California Supreme Court has stated that, "[w]hile a perfect chain of custody is desirable, gaps will not result in the exclusion of evidence, so long as the connections offered link the evidence with the case and raise no questions of tampering." *People v. Catlin*, 26 Cal.4th 81, 134 (2001).  Here, the DNA evidence was credibly linked to Petitioner and there has been no evidence put forth regarding tampering.  As such, neither trial nor appellate counsel were ineffective for failing to challenge the admission of the DNA evidence on chain of custody grounds.  *See Foley v. Kernan*, 2017 WL 3840343, at *22 (S.D. Cal. Sept. 1, 2017)("[S]peculative allegations are insufficient to challenge a chain of custody finding in state court."); *see also Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (finding no prejudice from trial counsel's failure to object to evidence based upon the chain of custody where there was no reason to believe that the prosecution could not have met its burden).

Petitioner claims that trial counsel was ineffective for allowing the victim's statements to police to be read into the record. (Petition, Attached Memorandum at 20-22.)  As previously discussed, however, the California Court of Appeal held that defense counsel "made a tactical decision to have the reports read into evidence" because they were concerned that the victim's testimony was impacting the jury and they wanted to introduce the statements to show her inconsistencies.  (Lodged Document No. 2 at 239.)  Counsel's reasonable tactical decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 687, 694; *Furman v. Wood*, 190 F.3d 1002, 1007 (9th Cir. 1999).  Moreover, as noted by the state appellate court, all

the statements by the victim would have been admitted into evidence as prior consistent or inconsistent statements even had counsel not agreed to let the report be read into the record. Thus, even if counsel's acquiescence to the procedure used by the court was unreasonable, Petitioner has not demonstrated how he was prejudiced.

Petitioner claims that trial counsel was ineffective for failing to investigate and present exculpatory evidence. He contends that counsel should have called two medical experts to testify that the victim's genital injuries were consistent with consensual sex and were not necessarily caused by forcible penetration with a vibrator. (Petition, Attached Memorandum at 23-24.) The California Court of Appeal rejected that claim, finding that substantial evidence supported a finding that counsel's tactical decision not to call an expert witness was reasonable. (Lodged Document No. 2 at 241.) The Court agrees.

Generally speaking, the decision as to what witnesses to call is a tactical, strategic decision within the control of the attorney. *See, e.g., Bravo v. Hedgepeth*, 2011 WL 835771, at *8 (C.D. Cal. Jan. 25, 2011). Here, on cross-examination, the examining nurse admitted that, although the victim had more injuries than what one would expect to see with "normal sex," consensual sex can cause injuries to the genital area. (RT 2145.) The nurse also admitted that if the victim had recently had other sexual contact that could have "contribute[d]" to any injuries. (RT 2144.) From this, counsel argued to the jury that the physical evidence in the case was consistent with consensual sex, noting that the nurse opined that the victim's injuries were "consistent with the use of a vibrator," but that she "could not tell

34

us whether the use of the vibrator was from consensual sex or not."
(RT 2432, 2435.)

The record supports the state court's finding that trial counsel's strategy to rely on the state's expert without calling their own experts was a reasonable one. *See Ellefson v. Hopkins*, 5 F.3d 1149, 1150-51 (8th Cir. 1993) (holding counsel's decision not to call a medical expert to refute the State's expert in sexual assault case not deficient, where "trial counsel's strategy was to call into question the weight of the State's scientific evidence through his cross-examination of the State's expert"). In any event, Petitioner has not demonstrated that calling his own medical experts would have changed the outcome of this case. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (denying ineffective assistance claim for failure to demonstrate how expert testimony would have raised a "reasonable probability" outcome of trial would have been different).

Finally, Petitioner argues that trial counsel was ineffective for not calling his brother to testify that he was with Petitioner on the night of the rape and saw the victim leave the bar voluntarily with Petitioner to go to a motel. (Petition, Attached Memorandum at 24, 26-27.) In denying this claim, the California Court of Appeal held that the trial record supported a finding that defense counsel made a reasonable tactical decision not to call the brother as a witness:

> In support of [Petitioner's] motion for a new trial,
> Luis Hughes, [Petitioner's] brother, claimed to have told
> [Petitioner's] trial counsel he had been with [Petitioner]
> at JJ's and had seen him leave with the victim at about the
> time of the alleged kidnapping. [Petitioner's] first trial
> attorney, Mark Shapiro, testified Luis had told him he did

not recognize the victim and had no information about the night in question. At some point during trial, Luis told the next defense attorney, Sandra Applebaum, that he and [Petitioner] went to bars and [Petitioner] "hooked up" with women there. At the same time, a note was found during a patdown of [Petitioner] at the county jail. In the note, [Petitioner] instructed his brother to say they met a girl at a bar, and she and [Petitioner] "took off." On suspicion that [Petitioner] was concocting an alibi, his conversation with his wife was recorded. [Petitioner] told his wife the note was incriminating and that she should tell Luis "what to say, what I want him to say in court." [Petitioner's] wife related to his attorneys that the police had confiscated the note, and the attorneys were concerned the note would be used for impeachment. They checked with Luis whether he had been with [Petitioner] on the night of the alleged assault, and he again denied it.

[Petitioner] contends Luis should have been called as a witness based either on his claim that he was a percipient witness on the night in question, or on his claim that he and [Petitioner] had a custom of going to bars where [Petitioner] would pick up consenting women. The trial court credited the attorneys' testimony and questioned the veracity of the proposed alibi. Substantial evidence in the record indicates the attorneys decided not to call Luis because he denied being present on the night in question, and it is fair to infer that the confiscated note could have been used to impeach him had he testified at trial.

(Lodged Document No. 2 at 240-41, 246.)

The state court's factual findings regarding counsel's decision
not to call Luis as a witness are presumed to be correct because
Petitioner has not rebutted them with clear and convincing evidence.
*See Rodriguez v. McDonald*, 872 F.3d 908, 919 (9th Cir. 2017) ("On
habeas review, the state court's factual findings are entitled to a
presumption of correctness, and may not be overturned unless rebutted
by clear and convincing evidence."). Because Luis repeatedly denied
being with Petitioner on the night of the rape, his testimony at trial
would not have aided Petitioner's defense. In fact, had he testified,
and had the prosecution been able to introduce the confiscated note
written by Petitioner and the subsequent conversation Petitioner had
with his wife suggesting that he was attempting to have his brother
concoct an alibi for him, Luis's testimony would have been far more
damaging to Petitioner's case than helpful. Thus, counsel made a
reasonable tactical choice not to call Luis as a witness at trial.
*See, e.g., Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir.
1997) (finding failure to call witnesses was a reasonable tactical
decision where counsel reasonably believed testimony could
"backfire").[11]

G.  <u>Cumulative Error</u>

Finally, in Ground Six, Petitioner claims that the cumulative
errors at trial resulted in a denial of his right to due process.
(Petition, Attached Memorandum at 45-46.) "The cumulative error
doctrine in habeas recognizes that, even if no single error were
prejudicial, where there are several substantial errors, their

---

[11] After hearing Luis's proposed testimony during the post-trial
hearing on the motion for a new trial, the trial court opined that
Luis was a "really terrible witness," that he was not "credible," and
that it "would have been a disaster if he had testified." (RT 6644-
45.)

cumulative effect may nevertheless be so prejudicial as to require reversal." *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (internal quotation marks omitted).  Because there is no merit to any of Petitioner's underlying claims of error, there is nothing to accumulate and, therefore, Petitioner is not entitled to relief based on cumulative error.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Accordingly, this claim is rejected.[12]

V.

RECOMMENDATION

For these reasons, IT IS RECOMMENDED that the Court issue an Order (1) accepting this Final Report and Recommendation, (2) directing that Judgment be entered denying the Petition and dismissing the case with prejudice, and (3) denying a Certificate of Appealability.

DATED: June 25, 2018.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-State Habeas\HUGHES, G 154\Final R&R.wpd

_____

[12]  Petitioner separately claims there was cumulative prejudice from multiple instances of ineffective assistance of counsel. (Petition, Attached Memorandum at 28-30.)  This claim is rejected for the same reason his claim in Ground Six fails.